Blaine HEARLD, Appellant,

v.

Tiffanie HEARLD, Appellee.

No. 2008–CA–000601–ME.

Court of Appeals of Kentucky.

Feb. 13, 2009.

Tasha K. Scott, Florence, KY, for appellant.

Thomas D. Collins, Independence, KY, for appellee.

Before STUMBO and THOMPSON, Judges; GUIDUGLI,[1] Senior Judge.

*OPINION*

THOMPSON, Judge.

Blaine Hearld appeals from a custody order of the Kenton Family Court that awarded custody of his three minor children to the children's mother, Tiffanie Hearld.[2] We conclude that the family court lacked jurisdiction under the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA) and vacate the order.

The parties were married in Kenton County in 2004 and have three minor children. Following their marriage, the parties moved to Florida and then to North Carolina where they remained until April 6, 2007, when the parties separated and Tiffanie and the children returned to Kentucky. Blaine, a member of the United States Marine Corps, remained in North Carolina awaiting his deployment to Iraq.

---

1. Senior Judge Daniel T. Guidugli sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. At times in the record, "Tiffanie" and "Tiffianie" are used to identify the mother. Because "Tiffanie" is named in the notice of appeal, we elect to address the mother as Tiffanie.

In June 2007, the parties entered into a separation agreement pursuant to which Blaine was awarded custody of the children with specific visitation awarded to Tiffanie, and the children returned to their father's custody. Except for a brief period in July 2007, they remained in North Carolina through October 27, 2007, when Tiffanie took the children to Kentucky.

She filed a petition for dissolution of marriage in the Kenton Family Court on January 9, 2008. Blaine was served through the Secretary of State to his commanding officer.

On January 21, 2008, Blaine arrived at Tiffanie's residence to visit the children prior to his deployment overseas. Upon his arrival, Blaine informed Tiffanie that he was taking the children with him, and the parties engaged in a verbal dispute. The police were called and upon their arrival, Blaine produced a document, presumably the separation agreement pursuant to which Blaine was the custodial parent, and informed one of the officers that he was taking the children to Lexington and would return them on January 26, 2008. With Blaine's assurance, the officer permitted him to leave the premises with the children. Blaine failed to return the children or inform Tiffanie of their location. He allegedly told Tiffanie that he was being deployed to Iraq the following day and that he "may or may not ever" inform her of the children's location.

On January 30, 2008, Tiffanie filed a motion seeking joint custody of the children. In her supporting affidavit, she stated that Blaine refused to reveal the location of the children or allow her to speak with them and that Blaine was soon to be deployed to Iraq. The Kenton Family Court issued an order requiring that all parties attend a status hearing on February 19, 2008. On February 15, 2008, Tiffanie filed an *ex parte* motion for emergency custody of the children and, on the same date, an *ex parte* order was entered granting Tiffanie emergency custody of the children.

On February 18, 2008, Blaine's North Carolina counsel wrote a letter advising the Kenton Family Court that Blaine was deployed and that the children had lived in Kentucky for only two and one-half months. The letter was accompanied by a "Motion for Custody" filed in North Carolina on February 15, 2008.

The hearing commenced on the scheduled date, and the court heard testimony from the mother. Blaine did not appear. At the close of the hearing, the court indicated that it would contact the North Carolina court to determine which state met the jurisdictional requirements of the UCCJEA; however, there is no indication in the record that any contact was made.

On February 25, 2008, the Kenton Family Court entered an order granting custody to Tiffanie and stating that Blaine's parenting time would be determined when Blaine availed himself to the jurisdiction of the court.

On March 25, 2008, Blaine entered a special appearance for the sole purpose of making a motion to dismiss the action based on the court's lack of subject matter jurisdiction under the UCCJEA and *in personam* jurisdiction over him. In his motion, he alleged that he had custody of the children pursuant to the parties' separation agreement and that Tiffanie had previously neglected one of the children. He further maintained that, under the Soldiers' and Sailors' Civil Relief Act, the custody action could not proceed.

The court conducted a hearing on the motion and stayed the action pursuant to the Soldiers' and Sailors' Civil Relief Act

but declined to dismiss the custody petition. This appeal followed.

In 2004, the General Assembly replaced the Uniform Child Custody Jurisdiction Act (UCCJA) with the UCCJEA. Although the UCCJEA contains substantive changes when making a determination of initial jurisdiction and modification jurisdiction, its purpose remains the avoidance of jurisdictional competition and conflict with other states in child custody matters. *Wallace v. Wallace*, 224 S.W.3d 587 (Ky. App.2007). As a prerequisite to invoking jurisdiction over an initial custody determination, KRS 403.822 provides in its entirety:

(1) Except as otherwise provided in KRS 403.828, a court of this state shall have jurisdiction to make an initial child custody determination only if:

(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state; or

(b) A court of another state does not have jurisdiction under paragraph (a) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under KRS 403.834 or 403.836; and

1. The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

2. Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships; or

(c) All courts having jurisdiction under paragraph (a) or (b) of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under KRS 403.834 or 403.836; or

(d) No court of any other state would have jurisdiction under the criteria specified in paragraph (a), (b), or (c) of this subsection.

(2) Subsection (1) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

(3) Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child custody determination.

The parties concede that Kentucky was not the home state of the children for the six months prior to the commencement of the custody proceeding. Moreover, there is no evidence to suggest that the children's home state, North Carolina, had declined to exercise jurisdiction. Thus, even Tiffanie agrees, jurisdiction must be conferred by the temporary emergency jurisdiction provision contained in KRS 403.828(1).

The statute is an exception to the home state requirement. It states that: "A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." Enacted in 2004, Kentucky case law interpreting the statute is scant. However, the comments to the UCCJEA indicate, it is "an extraordinary jurisdiction reserved for

extraordinary circumstances." Unif. Child Custody Jurisdiction & Enforcement Act, Comment, § 204, 9 U.L.A. 649 (1999).

In the present case, there is no allegation that the children are subject to mistreatment or abuse. Although Blaine took the children to an undisclosed location, pursuant to the parties' separation agreement, Blaine was the children's custodial parent. There was no evidence to suggest that Blaine intended to leave his children unattended or abandoned as Tiffanie suggested. To the contrary, he filed an affidavit with the court stating that his sister would care for the children while he was deployed. It appears that the most important factor considered for the assumption of jurisdiction by the Kenton Family Court was Blaine's pending deployment to Iraq.

To validate Tiffanie's contention that Blaine's deployment to Iraq and refusal to disclose the location of the children constitute mistreatment or abuse would be to broaden the scope of KRS 403.828(1) and defeat the underlying purpose of the UCCJEA. Military deployment of a parent poses numerous hardships and difficulties for children in the context of a marital relationship and is even more pronounced when a custodial parent is deployed. Yet, those serving in our military cannot axiomatically be deprived custody of their children while serving our country, and their deployment cannot be considered an "emergency" sufficient to invoke subject matter jurisdiction. To hold otherwise would permit the parent seeking custody to file a petition for custody literally moments before the serving parent's deployment in virtually any state without regard to either the purpose or the jurisdictional prerequisites of the UCCJEA.

It is our conclusion that because there is no evidence that the children are in foreseeable danger of mistreatment or abuse, KRS 403.828(1) does not apply. There being no basis for the Kenton Family Court to assert subject matter jurisdiction over the custody matter, the custody order is vacated and the case remanded for an order dismissing the petition for custody. The remaining arguments presented by Blaine are moot.

ALL CONCUR.